1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DY BUN,                              )    1:07-cv-00097-AWI-TAG HC
                                     )
                    Petitioner,      )    FINDINGS AND RECOMMENDATIONS
                                     )    TO GRANT RESPONDENT'S MOTION
     v.                              )    TO DISMISS PETITION FOR WRIT OF
                                     )    HABEAS CORPUS FOR LACK OF
DENNIS SMITH,                        )    RIPENESS; ORDER TO FILE OBJECTIONS
                                     )    WITHIN TWENTY DAYS (Doc. 6)
                    Respondent.      )
_____  )

     Petitioner is a federal prisoner proceeding with a petition for writ of habeas corpus  pursuant
to 28 U.S.C. § 2241.

### FACTUAL AND PROCEDURAL HISTORY

     The instant petition was filed on January 8, 2007.  (Doc. 1).   The petition contends Petitioner
was sentenced on August 30, 2006 to a prison term of seventy months as a result of a conviction for
violating 21 U.S.C. § 846 (conspiracy to distribute MDA and MDMA).  (Doc. 1, p. 3).  The petition
also asserts that Petitioner is now in the custody of the Bureau of Prisons ("BOP"), that he is a first-
time offender, and that he is presently assigned to a prison camp without bars or fences, a fact that, in
Petitioner's view, is evidence that he poses no flight risk or danger to the community.  (Id.).

     Petitioner notes that various federal courts, including this Court, have concluded that the
2002 and 2005 BOP regulations, by which the BOP has arbitrarily designated a maximum placement
time in Residential Re-Entry Centers ("RRC's")[1] equal to 10% of the prisoner's sentence, are illegal.

_____

     [1]Previously, RRC's were referred to as Community Correctional Centers, or CCC's.  Documents
in this case filed prior to the change in terminology refer to such placements as CCC's.  However, for
consistency, the Court will refer to them as RRC's.

1   (Id. at p.4).  Petitioner contends that, under 18 U.S.C. § 3621(b),  the BOP "has a duty to consider

2   the enumerated factors set forth in the consideration of each individual prisoner on a case by case

3   basis to determine the appropriate place of imprisonment," and, implicitly, Petitioner contends that

4   BOP has failed to do so in his case.  (Id.).

5   Petitioner also asserts that he has elderly parents in need of his financial support and an

6   immediate re-assignment to an RRC will permit him to support his family during the remainder of

7   his sentence.  (Id. at p. 3).  Petitioner seeks an immediate placement in an RRC. (Id. at p. 5).

8   On May 15, 2007, Respondent filed the instant motion to dismiss, alleging that the petition is

9   premature because the BOP is not legally required to evaluate Petitioner for placement in an RRC

10  until eleven to thirteen months before his release date.  (Doc. 6, p. 2).  Respondent has submitted a

11  copy of "Program Statement 7310.04, Community Correction Center (CCC) Utilization and Transfer

12  Procedure, (12-16-1998)." ("Program Statement").  (Doc. 6, Exh. 2).  The Program Statement sets

13  forth procedures for placement of prisoners in RRC's by the BOP.  (Id.).  That document also

14  provides that, "Normally 11 to 13 months before each inmate's probable release date, the unit team

15  shall decide whether to refer an inmate to a Community Corrections program."  (Id. at ¶ 12.).

16  Respondent contends that Petitioner's release date is not until September 7, 2010, more than

17  forty months away, as of the date of the filing of the motion to dismiss.  (Doc. 6, pp. 2, 4; Doc. 6,

18  Exh. 1, Inmate Data, p. 2).  Respondent observes that, while challenging the 2002 and 2005 BOP

19  regulations and arguing that BOP has illegally failed to assign his to an RRC pursuant to 18 U.S.C.

20  § 3621(b), the petition does not challenge the Program Statement as illegal.  (Id. at p. 2).  Because

21  the program statement does not require BOP to make an assessment in Petitioner's case for over

22  three more years, in Respondent's view, the petition is not ripe and should be dismissed.  (Id. at p. 4).

23  On May 23, 2007, Petitioner filed his opposition to the motion to dismiss, contending that the

24  Program Statement "inflicts the same harm, limitations, and imposes the same unlawful policies and

25  procedure's" as do the 2002 and 2005 regulations by limiting BOP's discretion under § 3621(b).

26  (Doc. 7, p. 2).  Petitioner requests dismissal of Respondent's motion to dismiss and issuance of an

27  order directing Respondent to consider only § 3621(b) in making an "immediate placement and

28  transfer" of Petitioner to an RRC facility.  (Id. at p. 3).

**JURISDICTION**

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  <u>See</u> 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  <u>See</u>, <u>e.g.</u>,  <u>Capaldi v. Pontesso</u>, 135 F.3d 1122, 1123 (6th Cir. 1998);  <u>Kingsley v. Bureau of Prisons</u>, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); <u>United States v. Jalili</u>, 925 F.2d 889, 893-94 (6th Cir. 1991); <u>Brown v. United States</u>, 610 F.2d 672, 677 (9th Cir. 1980).  To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner.  <u>See</u>, <u>e.g.</u>, <u>Clark v. Floyd</u>, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody should be credited toward federal custody);  <u>Jalili</u>, 925 F.2d at 893-94 (asserting petitioner should be housed at a community treatment center);  <u>Barden v. Keohane</u>, 921 F.2d 476, 479 (3rd Cir. 1990) (arguing Bureau of Prisons erred in determining whether petitioner could receive credit for time spent in state custody);  <u>Brown</u>, 610 F.2d at 677 (challenging content of inaccurate pre-sentence report used to deny parol).  A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian.  <u>Brown</u>, 610 F.2d at 677.

In this case, Petitioner alleges that BOP's failure to conduct an immediate RRC placement assessment for Petitioner violates the interpretation of the 2002 and 2005 regulations and the BOP's exercise of discretion under § 3621(b).  Petitioner is therefore challenging the legality of the manner in which his sentence is being executed.  Thus, his petition is proper under 28 U.S.C. § 2241.  In addition, because Petitioner is incarcerated at the Federal Prison Camp, Atwater, California, which is within the Eastern District of California, Fresno Division, this Court has jurisdiction to proceed to the merits of the petition.

**EXHAUSTION**

A preliminary question is whether petitioner has exhausted available administrative remedies. Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of

imprisonment must first exhaust all administrative remedies. Western Radio Services Co. v. Espy, 79 F.3d 896, 899 (9th Cir. 1996); Martinez v. Roberts, 804 F.3d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).

The exhaustion prerequisite for filing a § 2241 petition is judicially created; it is not a statutory requirement. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), overruled on other grounds, Reno v. Koray, 515 U.S. 50, 54-55 (1995). Thus, "[b]ecause exhaustion is not required by statute, it is not jurisdictional." Brown, 895 F.2d at 535. If a petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits,  or require the petitioner to exhaust his administrative remedies before proceeding in court." Id.; McCarthy v. Madigan, 503 U.S. 140, 144-145 (1992), superceded on other grounds, 42 U.S.C. §1997(e).

One of the purposes of administrative exhaustion is to allow the agency an opportunity to remedy its own mistakes before being haled into court, and this applies with particular force when the challenged action involves an exercise of the agency's discretionary power. See, McCarthy v. Madigan, 503 U.S. at 145. Thus, exhaustion of administrative remedies would be futile and should be excused if the agency lacks authority to grant the requested relief or has predetermined the issued before it. See, id. at 148.

Here, Petitioner has not indicated that he has undertaken any efforts to exhaust his administrative remedies, but does contend that exhaustion would be futile. (Doc. 1, p. 4). Respondent has not addressed the issue.  As mentioned, however, futility is an exception to the exhaustion requirement. Laing v. Ashcroft, 370 F.3d 994, 1000-01 (9th Cir. 2004).  In the instant action, it is apparent that it would be futile for Petitioner to exhaust his administrative remedies because he alleges he is being denied an immediate RRC placement based on formally-adopted BOP regulations, including the Program Statement defining the RRC placement process, the validity of which BOP strenuously maintains.  In the Court's view, therefore, Petitioner's exhaustion of his administrative remedies is not a pre-requisite to the district court's jurisdiction over the case because of the BOP's intractable and immutable policy against the relief sought.

**DISCUSSION**

Article III of the United States Constitution limits the federal courts to deciding "cases" and "controversies."  To ensure that any matter presented to a federal court meets that requirement, the Court considers the doctrines of sanding, ripeness, and mootness.  <u>See</u>, <u>Poe v. Ullman</u>, 367 U.S. 497, 502-505 (1961).  The most important of these doctrines is standing.  <u>See</u>, <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984).   As a manifestation of the Article III case-or-controversy requirement, standing is a determination of whether a specific person is the proper party to invoke the power of a federal court.  <u>Coalition of Clergy, Lawyers, and Professors v. Bush</u>, 310 F.3d 1153, 1157 (9th Cir. 2002).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975).  To establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  <u>Id.</u> at 751.  The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,'" not conjectural or hypothetical.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)(citations omitted).

Closely related to standing is the issue of ripeness.  The ripeness doctrine serves "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.  <u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 148-149 (1967), <u>overruled on other grounds</u>, <u>Califano v. Sanders</u>, 430 U.S. 99 (1977).  The Supreme Court has stated that to meet the ripeness standard, plaintiffs must show either a specific present objective harm or the threat of specific future harm.  <u>Laird v. Tatum</u>, 408 U.S. 1, 14 (1972).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  <u>Texas v. United States</u>, 523 U.S. 296, 300 (1998)(internal citations omitted).

The Court agrees with Respondent that Petitioner's claim is not ripe and that, therefore, he presently lacks standing under Article III.  Even assuming, arguendo, that the petition properly challenged the validity of the Program Statement, that regulation does not, as Petitioner has

suggested, improperly limit the discretion of BOP to make an RRC placement in any individual case. Rather, the regulation only requires that BOP make an RRC placement assessment *at least* eleven to thirteen months prior to the inmate's release date. Nothing in the Program Statement prevents the BOP, in the exercise of its statutory discretion, from making an earlier determination, although the Court is not aware of any statute or regulation that requires such expedited action by the BOP. In other words, the Program Statement simply insures that inmates will receive an RRC assessment sufficiently in advance of their release date to permit them to make appropriate plans prior to their transfer. Because the Program Statement does not limit or otherwise intrude on the BOP's exercise of discretion in making its RRC assessment, the Program Statement, contrary to Petitioner's assertions, is not in any way analogous to the 2002 and 2005 regulations that many courts, including this one, have found to be an illegal limitation on the discretion vested in the BOP by § 3621(b).

Because Petitioner's release date is September 7, 2010, the Program Statement does not require that the assessment team meet to consider Petitioner's RRC placement until August 2009, over two years from now. Because Petitioner is not presently entitled to an RRC assessment under the applicable BOP regulation, he cannot show either a specific present objective harm or the threat of specific future harm. Laird, 408 U.S. at 14. Moreover, even Petitioner's release date is only tentative at this point; events could transpire between now and September 7, 2010 that would result in the postponement of Petitioner's release date to a more distant point in time. For this reason, Petitioner's claim of a right to an immediate assessment rests "upon contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. at 300. Thus, the claim is not ripe.

Moreover, the Court is unaware of any authority requiring the BOP to conduct its RRC eligibility reviews or immediately transfer a prisoner to an RRC facility *on demand of the prisoner*. Indeed, while case law from this Court strongly suggests that Petitioner is entitled to an RRC assessment made independently of the 2002 and 2005 regulations, Petitioner cites no authority for the proposition that he has either a statutory or constitutional right to an immediate assessment or transfer.

///

1    Finally, for good reason,  the Court is reticent to micro-manage the BOP regarding inmate

2 RRC assessments and placements.  "[F]ederal courts ought to afford appropriate deference and

3 flexibility to state officials trying to manage a volatile environment....Such flexibility is especially

4 warranted in the fine-tuning of the ordinary incidents of prison life...."  Sandin v. Conner, 515 U.S.

5 472, 482 (1995).  In Procunier v. Martinez, 416 U.S. 396, 404-405 (1974), overruled in part on other

6 grounds, Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court explained the basis for this

7 deference:

8        Traditionally, federal courts have adopted a broad hands-off attitude toward problems of
         prison administration.  In part this policy is the product of various limitations on the scope of
9        federal review of conditions in state penal institutions.  More fundamentally, this attitude
         springs from complementary perceptions about the nature of the problems and the efficacy of
10       judicial intervention.  Prison administrators are responsible for maintaining internal order and
         discipline, for securing their institutions against unauthorized access or escape, and for
11       rehabilitating, to the extent that human nature and inadequate resources allow, the inmates
         placed in their custody. The Herculean obstacles to effective discharge of these duties are too
12       apparent to warrant explication.  Suffice it to say that the problems of prisons in America are
         complex and intractable, and, more to the point, they are not readily susceptible of resolution
13       by decree.  Most require expertise, comprehensive planning, and the commitment of
         resources, all of which are peculiarly within the province of the legislative and executive
14       branches of government.  For all of those reasons, courts are ill equipped to deal with the
         increasingly urgent problems of prison administration and reform.  Judicial recognition of
15       that fact reflects no more than a healthy sense of realism.

16    In the instant motion to dismiss, Respondent indicates that the BOP is "well-aware of the

17 Court's ruling that RRC placement evaluations must be made without reference to 28 C.F.R. §§

18 570.20-21 and has been making its evaluations on that basis."  (Doc. 6, p. 4).  Respondent also

19 indicates that "[i]n all likelihood, petitioner will receive an evaluation of that type while he still has

20 at least 11 months to go before his good conduct release date."  (Id.).   Petitioner has given the Court

21 no reason to doubt the BOP's representations to the Court in that regard such that this Court should

22 expend its limited resources to oversee the BOP's conduct of future RRC assessments.

23    In light of the foregoing, the Court will recommend that Respondent's motion to dismiss be

24 granted and that the petition for writ of habeas corpus be dismissed without prejudice.  Petitioner

25 may re-file this habeas action if Respondent's final decision regarding Petitioner's RRC placement

26 fails to comply with current federal case law construing § 3621(b) and the applicable BOP

27 regulations.

28 ///

1

**RECOMMENDATIONS**

2      Accordingly, the Court RECOMMENDS as follows:

3      1. Respondent's Motion to Dismiss (Doc. 6), be GRANTED;

4      2. The Petition for Writ of Habeas Corpus (Doc. 1), be DISMISSED as not ripe; and

5      3. The Clerk of Court be DIRECTED to enter judgment.

6      These Findings and Recommendations are submitted to the United States District Court

7   Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304

8   of the Local Rules of Practice for the United States District Court, Eastern District of California.

9   Within twenty (20) days after being served with a copy, any party may file written objections with

10  the Court and serve a copy on all parties.  Such a document should be captioned "Objections to

11  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and

12  filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.

13  The District Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636

14  (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive

15  the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

16

17  IT IS SO ORDERED.

18  Dated:  __June 21, 2007__                                    ___/s/ Theresa A. Goldner___
                                                              UNITED STATES MAGISTRATE JUDGE
19  _____

20

21

22

23

24

25

26

27

28